MEYER *v.* GARVIN, RECEIVER.

[No. 16,421. Filed November 14, 1941. Rehearing denied January 5, 1942. Transfer denied February 10, 1942.]

404

406

*Davis, Pantzer, Baltzell & Sparks* and *Gustav H. Dongus,* all of Indianapolis, for appellant.

*Walter Myers, Walter Myers, Jr.,* and *Floyd W. Burns,* all of Indianapolis, and *Richman & Sharpnack,* of Columbus, for appellee.

FLANAGAN, J.—Thomas E. Garvin, receiver of The Meyer-Kiser Bank, appellee herein, commenced this action against the appellant, Sol Meyer, seeking recovery for certain assets of The Meyer-Kiser Bank alleged to have been converted by appellant to his own use while president of said bank.

The complaint was filed in six paragraphs, but appellee withdrew the fourth and fifth. Appellant's answer to each of the remaining paragraphs of complaint was, first, general denial, and second, the six-year statute of limitations. To the second paragraph of answer appellee replied in general denial.

The several paragraphs of complaint each averred that appellee was duly appointed receiver of said bank on May 4, 1933, by the Marion Circuit Court; that The Meyer-Kiser Bank was incorporated as a bank of discount and deposit under the laws of Indiana in 1926, and engaged in a general banking business in Indianapolis from that time to the date of the appointment of appellee as receiver; that during all that time appellant was president of the bank; that during that time he converted various assets of the bank to his own use; and that he concealed the fact of converting said property from all persons, and appellee did not discover said conversions until after his appointment as receiver. The paragraphs of complaint differ only in their aver-

ments as to the property alleged to have been converted and the times of the conversions.

Paragraph one alleges that certain of the property and securities of the bank were kept in the name of Meyer and Kiser, a partnership; and that therefrom appellant, about May 5, 1931, converted $52,000 by contributing it to Meyer-Kiser Corporation; about April 1, 1924, he converted $200,000 by contributing it to Meyer-Kiser Bank Realty Company; and that he also converted other sums believed to total $150,000.

Paragraph two alleges that certain of the property and securities of the bank was kept in an account known as Meyer-Kiser Bank Contingent Fund; that therefrom appellant, about May 5, 1931, converted and used $117,720, and at another time, not stated, converted $125,872.82 by using it to purchase stock in The Meyer-Kiser Bank of Miami, which stock was issued in names of members of the Meyer and Kiser families; and that he also converted other sums believed to total $100,000.

Paragraph three alleges that appellant converted to his own use funds of the bank in the sum of $111,943.05 by transferring that amount to United Securities Corporation without consideration.

Paragraph six alleges that while president of the bank, appellant converted to his own use property of the bank to the extent of $750,000.

The verdict of the jury was for appellee in the sum of $1,208,333.33. Upon remittitur being filed by appellee for the item designated in appellee's first paragraph of complaint as $200,000 contributed to The Meyer-Kiser Bank Realty Company, with interest, or a total of $383,400, the trial court entered judgment on the verdict for $824,933.33.

Alleged errors relied upon for reversal are: (1) Overruling appellant's motion to make the complaint

more specific; and (2) overruling appellant's motion for a new trial.

. Reasons for a new trial duly assigned below and relied on here are: (1) The verdict of the jury is contrary to law; (2) the verdict of the jury is not sustained by sufficient evidence; (3) error of the court in giving on its own motion its instruction numbered 4; (4) error of the court in giving instructions tendered by appellee numbered 10 and 12; (5) error of the court in refusing to give instructions tendered by appellant numbered 1 to 7 inclusive, and 9, 10, 13, 16 and 18; (6) error of the court in allowing to be read in evidence the testimony of appellant given during a hearing in the Marion Circuit Court in June 1933; and (7) error of the court in admitting into evidence appellee's exhibit numbered 16, which purported to be a carbon copy of an affidavit signed by appellant in September, 1927, and filed with the Internal Revenue Agent in Charge, in Indianapolis.

We first direct our attention to appellant's complaint that the court erred in overruling his motion to make the complaint more specific. Appellant contends that the details of the various alleged conversions are not sufficiently set forth.

Rulings on motions to make more specific are largely in the discretion of the trial court and this court will not consider such ruling cause for reversal unless the trial court is shown to have abused its discretion and that the complaining party has been harmed. *Atkinson* v. *Davis* (1938), 105 Ind. App. 375, 379, 13 N. E. (2d) 355; *Indianapolis Power & Light Co.* v. *Waltz* (1938), 104 Ind. App. 526, 529, 12 N. E. (2d) 404; *The Trayser Piano Company* v. *Kirschner* (1880), 73 Ind. 183, 184.

Section 2-1063, Burns' 1933, § 168, Baldwin's 1934, provides that in cases where the proof offered at trial is at total variance with the allegations of a pleading, the variance shall not be deemed material unless the complaining party has been misled to his prejudice in maintaining his action or defense upon the merits; and whenever it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the trial court, and thereupon the court may order the pleading to be amended on such terms as may be just.

The reasons which caused the Legislature to enact that statute apply with even greater force to a situation in which no variance exists, but where the complaining party is actually informed as to the charge he is to meet and complains only of the lack of details. Such reasons, without the need of statutory enactment, should persuade this court of the absence of harm in a ruling on a motion to make more specific where, as in this case, the complaining party is informed by the pleading of the nature of charges against him, sought no information by interrogatories, made no claim of surprise or lack of preparation when detailed evidence is introduced in support of the charges, and seeks no time for further preparation when such detailed evidence is introduced but proceeds with his defense in a manner indicating proper preparation. The ruling on the appellant's motion to make the complaint more specific does not constitute reversible error.

Appellant next contends that the evidence is insufficient to sustain the verdict and the verdict is therefore contrary to law. In determining the sufficiency of the evidence, it is not our privilege to weigh the evidence but we must consider only the evidence most favorable to the verdict of the jury and all

reasonable inferences to be deduced therefrom. From the evidence the jury could find the following facts:

Appellant and his cousin, Sol Kiser, organized the partnership of Meyer and Kiser in 1895. It engaged in the real estate, insurance and brokerage business and speculated in grains and stock until 1906, when the two partners organized the Meyer-Kiser Bank. When the charter of the Meyer-Kiser Bank expired in 1926, they organized The Meyer-Kiser Bank which continued the business of the old bank until May 12, 1931, when liquidators were appointed by the State Banking Department who continued in charge until June, 1933, when appellee was appointed receiver.

At the time of the organization of the original bank in 1906, the partnership of Meyer and Kiser ceased to exist; and thereafter all business transacted in the name of Meyer and Kiser was in reality for the bank. In order to continue the various lines of business in which the partnership had been engaged, some of which could not be legally pursued by a banking corporation under the laws of this State, and to avoid bringing these illegal transactions to the attention of the State Banking Department and to the public generally, appellant, who was a all times president and in complete charge of the management of the bank, in some transactions used the name of Meyer and Kiser instead of the name of the bank. For the purpose of carrying on these transactions, which were outside the legal sphere of a banking corporation, appellant kept some of the funds of the bank in an account separate from the bank's other funds, which account was designated "Meyer-Kiser Bank Contingent Fund." All transactions in which these funds were used were concealed by appellant from all other persons and all records in regard thereto were kept under lock in appellant's desk or in

a vault removed from other bank records and property and under appellant's sole control. No references as to this account or the transactions in relation thereto were contained in reports made to the State Banking Department, but they were reported to the Federal Government as part of the business of the bank in order to obtain favorable income tax decisions.

At the time of the organization of the bank, appellant and Sol Kiser each owned one-half of the stock. Thereafter, from time to time, they gave some to members of their respective families, but the stock continued to be owned by the two families until August, 1930, when some stock was offered to the general public. Thereafter, in order to have a fund further removed from the new stockholders, some of the funds of the bank were transferred into a new account called the "Smetal Trust." This account and records and transactions relating thereto were handled by appellant in the same secret manner and concealed in like manner as were those relating to the Meyer-Kiser Bank Contingent Fund.

Appellant used the funds in the Meyer-Kiser Bank Contingent Fund and in the Smetal Trust from time to time either for his unexplained personal use or for the promotion of enterprises in which he was interested, which were entirely removed from the bank or its business. These enterprises included Meyer-Kiser Corporation, Meyer-Kiser Bank of Florida, United Securities Corporation, and Floridian Hotel. The Meyer-Kiser Corporation was an automobile financing company. The Meyer-Kiser Bank of Florida was a Florida bank which went into receivership at the same time as the Indianapolis bank. The United Securities Corporation was a Florida corporation organized for the purpose of owning real estate in Florida. The Floridian Hotel

was a hotel located at Miami, Florida. The stock in the above corporations was owned or controlled by the Meyer-Kiser families.

From either the Meyer-Kiser Bank Contingent Fund or the Smetal Trust, appellant appropriated and used for these enterprises the following amounts: Meyer-Kiser Corporation $52,000, Meyer-Kiser Bank of Miami $117,720 at one time and $125,872.86 at another, United Securities Corporation $111,943.95, Floridian Hotel $15,000. In addition he appropriated for his own unexplained use, $11,700, and to send to his son in Florida, $150,000. Some of the appropriations were made more than six years prior to the commencement of this action.

The above items, together with interest from the respective dates of appropriation, total the amount of the judgment entered in this case.

Appellant points to a great amount of evidence and urges that in many particulars the evidence is unsufficient to sustain the verdict. But appellant points to the evidence favorable to him in regard to which there is conflict. We repeat that we cannot weigh the evidence but must consider only the evidence and reasonable inferences therefrom most favorable to the verdict of the jury. Considering it in that manner, we have set forth the facts as they could be found by the jury; and we think they are amply sufficient to sustain its verdict.

Appellant next complains of the giving and refusal of certain instructions. Instructions tendered by appellant numbered 1, 2, 3, 4, 5 and 7 inclusive were peremptory instructions based on insufficiency of the evidence. From our discussion of that subject, it follows that there was no error in refusing them.

Instruction numbered 6 tells the jury to find for the appellant with respect to the alleged conversion of $200,000 contributed to the Meyer-Kiser Bank Realty Company. This object was accomplished by the remittitur, and therefore the refusal to give this instruction was not harmful.

Instructions numbered 10, 16, and 18 tendered by appellant tell the jury that if the funds alleged to have been appropriated were the funds of the bank and were used in the business of the bank there was no conversion; that use of funds of the bank with authority of the board of directors, in matters where the board of directors had power to grant authority, would not constitute conversion; and that contributions to other corporations approved by the officers and directors of the bank and believed by them to be for the promotion of the interests of the bank would not constitute conversion. These phases of the case were fully and fairly covered by other instructions given by the court, and there was no error in refusing to give these.

Instruction numbered 13 tendered by defendant told the jury that others besides the bank were beneficially interested in the Smetal Trust and therefore only the receiver for the Smetal Trust could maintain an action for alleged conversions from that fund. The question as to whether others had a beneficial interest in the Smetal Trust was disputed in the evidence and was for determination by the jury. The instruction was incorrect and was properly refused.

Appellant complains of the giving of appellee's tendered instruction numbered 10 which informs the jury that if it finds that Thomas E. Garvin was appointed receiver of The Meyer-Kiser Bank and of the Smetal Trust in two separate actions,

that fact of itself would not prove that the bank did not own the assets in the Smetal Trust. We think the instruction correctly states the law. We know of no rule, nor are we cited to any, which makes the mere appointment of a receiver conclusive adjudication of the ownership of particular property.

Appellant next objects to the giving by the court on its own motion, its instruction numbered 4. This instruction informed the jury in the language ▮▮▮ of the statute, § 2-609, Burns' 1933, § 68, Baldwin's 1934, that concealment would toll the statute of limitations. The complaint is that the instruction does not define the nature of the concealment required. However, it does correctly state the law and no valid objection to it is possible. If appellant desired a further instruction defining what is meant by concealment, he should have tendered one. *Piepho* v. *Geese* (1939), 106 Ind. App. 450, 18 N. E. (2d) 468.

Appellant also complains of the refusal of the trial court to give to the jury his tendered instruction numbered 9 which would have advised the jury ▮▮▮ that unless the alleged conversions were concealed from all other officers and directors of the bank the statute of limitation would not be tolled; and further complains of the giving by the court of appellee's tendered instruction numbered 12 which advised the jury that if the directors of the bank had knowledge of, acquiesced in and took part in the conversions and by their actions and conduct concealed the conversions from all others the statute of limitations would be tolled. We think the court was correct in each instance.

Under § 3965, Burns' 1926, and amendments by chapter 161, Acts 1929, in effect at the times herein involved, the State Bank Commissioner was charged with the duty to discover through the bank examiners

if the assets of any bank "are being wasted or improperly used or converted." Upon the discovery of such situation, he was authorized to appoint some person to take charge of the bank and to apply for a receiver. Action by the receiver to recover for any conversions would naturally follow. We think the bank commissioner is thus clearly brought within the statute on concealment and that concealment from him tolls the statute of limitations.

Appellant next complains of the action of the court in permitting to be read in evidence the testimony of appellant at another trial. This evidence was admissible as an admission of the appellant. *Fuller* v. *Fuller* (1913), 52 Ind. App. 488, 491, 100 N. E. 869. We see no merit in the objection that the official court reporter at the former trial was permitted to read from his transcribed notes instead of merely from memory or after having his memory refreshed by reference to the transcribed notes. The method employed would detail appellant's former testimony with the greatest degree of accuracy. We do not see how he could be thereby harmed.

Finally, appellant complains of the action of the trial court in admitting into evidence appellee's exhibit 16 for the reason that it was not shown to be a true carbon copy, because the witness identifying it had not compared it with the original. Such comparison was not necessary. The exhibit is a copy of a brief on behalf of the bank, prepared and filed by the witness. He identified the exhibit as a carbon copy of the one signed by appellant and filed. We think it was sufficiently identified as a true carbon copy to be admitted into evidence.

We find no reversible error in the record. Judgment affirmed.

CURTIS, J., not participating.

NOTE.—Reported in 37 N. E. (2d) 291.