COPELAND ETC. *v.* PUBLIC SERVICE COMPANY OF
INDIANA, INC., ET AL.

[No. 18,346. Filed October 23, 1952. Rehearing denied
December 11, 1952. Transfer denied with opinion
March 27, 1953.]

Walter F. Wood, of Sullivan, and Bert M. Laymon, of Brazil for appellant.

Bernard C. Craig, of Brazil, for appellee.

ROYSE, P. J.—Appellant brought this action against appellees for damages for personal injuries sustained when his automobile struck a utility pole on the shoulder of a public highway. Appellant's second amended complaint was in two paragraphs. Appellees' motion to make each paragraph more specific was overruled. The demurrer of each appellee to both paragraphs of complaint was sustained by the trial court. Appellant refused to plead further and judgment was entered against him in favor of appellees. Errors assigned here question that action of the trial court.

The pertinent portions of the first paragraph of amended complaint are as follows:

"1. That on the 6th day of March, 1951 the Defendant, Public Service Company of Indiana, Inc. was a corporation engaged in the transmission and distribution of electricity and the Defendant, L. E. Myers Company was a corporation engaged in the construction of power lines and other construction work.

"2. That on said 6th day of March and for a long time previous thereto, there was an Indiana State Highway extending from the city of Terre Haute, Indiana, to the town of Merom, Indiana, and passing through the town of Fairbanks, Indiana, which said highway is known as State Highway 63. That said highway at said time was paved with black-top to a width of about eighteen feet; that the right of

way of said state highway was about eighty feet wide and that said pavement was located in about the middle of said right of way. That at said time there was a large amount of automobile travel on said state highway daily. That at said time plaintiff was of the age of eighteen years.

"3. That several weeks before said 6th day of March the defendants unlawfully obstructed said state highway by unloading and placing along the west side of said pavement on the shoulder of said road many wooden utility poles about forty feet long and about one foot in diameter and left said utility poles lying flat on the ground at different places along said pavement for miles north from said town of Fairbanks, and that many of said poles were within two or three feet of said pavement, and about one pole for each 200 feet along said pavement.

"4. That defendants unlawfully permitted said utility poles to remain along the west side of said pavement as so placed and laid on the ground by them and obstructed said highway with the same until the 6th day of March, 1951.

"5. That at the time defendants so dumped and placed said utility poles along said highway and during the time said poles were permitted to so remain along said pavement there was in force statutes in the State of Indiana making it unlawful to obstruct any public highway and making it a misdemeanor to put, throw, dump or leave any wood or logs in, upon, or within the limits of any public highway.

"6. That said utility poles were so placed along said pavement by defendants without the direction or permission of any township trustee, any superintendent or any board of county commissioners, or the Indiana State Highway Commission.

"7. That the obstruction of said highway by putting and leaving said utility poles on and along the shoulder thereof constituted a dangerous hazard to said highway which fact was well known by the defendants at the time they so put and left said utility poles, and that during all of said time defendants' authorized agents and employees knew,

or by the exercise of reasonable care could have known that said poles created a condition by which injury to persons traveling along said highway in automobiles was made possible, and that defendants could have reasonably anticipated that an automobile traveling along said highway would run off of said pavement and strike one of said poles with probable injury to the driver of such automobile. That automobiles traveling along said pavement frequently ran off of said pavement onto the shoulder of said road which fact was well known to the defendants at the time they so placed and left said utility poles on the shoulder of said road.

"8. That on the said 6th day of March, 1951 plaintiff was driving a Chevrolet automobile north on said public highway about one mile north of said town of Fairbanks at a rate of speed of about 45 miles per hour at which point he lost control of his said automobile momentarily without any fault on his part and his said automobile veered to the left and ran off of said pavement onto the shoulder of said road.

"9. That plaintiff immediately regained control of his said automobile and was steering said automobile on the shoulder of said road back to said pavement when his said automobile struck one of said utility poles. That at the time that plaintiff regained control of his said automobile and was steering it back onto the pavement he was so close to the utility pole that he could not stop his automobile in time to avoid striking said pole, which said utility pole was lying on the shoulder of said road and part of the same was within two or three feet of said pavement.

"10. That by reason of striking said utility pole plaintiff's automobile was turned over and he was thrown out of said car and injured as hereinafter described.

"11. That the defendants were guilty of negligence in the following particulars, towit:

a. That defendants were guilty of negligence in obstructing the shoulder of said highway with said utility poles.

b. That defendants were guilty of negligence in leaving said utility poles on the shoulder of said highway.

c. That defendants were guilty of negligence by reason of the violation of statutes of the state of Indiana prohibiting the obstruction of highways and the putting, throwing, dumping, or leaving wood or logs upon and within the limits of said highway."

It then avers appellant was seriously and permanently injured by reason of such negligence.

The second paragraph was substantially the same except as to allegations of rhetorical paragraphs 4 and 5, which were as follows:

"4. That said utility poles lying along the west side of said pavement were a hazard to persons driving automobiles along said pavement by reason of the fact that should an automobile for any cause run onto the shoulder of said road and strike one of said poles said automobile would probably be wrecked and its occupants injured. That automobiles traveling along said pavement frequently ran off of said pavement onto the shoulder of said road which fact was well known to the defendants' authorized agents and employees at the time they put said poles in said position and defendants knew, or by the exercise of reasonable care could have known that if an automobile traveling along said highway should leave said pavement for a distance of two or three feet where said poles were laid and strike one of said poles that a wreck would probably result and the occupants of such automobile be injured. That defendants could have reasonably anticipated that an automobile being driven along said pavement would leave said pavement and strike one of said utility poles.

"That said utility poles were so placed along said pavement by defendants without the direction or permission of any township trustee, any superintendent or any board of county commissioners, or the Indiana State Highway Commission.

"5. That defendants unlawfully permitted said utility poles to remain along the west side of said pavement as so placed and laid on the ground by them continuously until the 6th day of March, 1951 and that during all of said time defendants knew, or by the exercise of reasonable care could have known that said poles created a condition by which injury to persons traveling along said highway in automobiles was made possible, and that defendants would have reasonably anticipated that an automobile traveling along said highway would run off of said pavement and strike one of said poles wrecking such automobile and injuring persons who might be riding in such automobile.

"That said utility poles could have been placed along the west line of said right of way about twenty feet from the west side of said pavement where there would have been little, if any, danger of the same being struck by an automobile."

This paragraph did not aver negligence by reason of the violation of the statutes.

The memorandum in support of the demurrers of each appellee to both paragraphs of complaint asserted that, unaided by the conclusions to which the motion to make more specific was addressed, neither paragraph of complaint showed appellees owed any duty to appellant or that they violated any duty owing to him; that it does not state facts showing that the result of any action on their part was such as might reasonably have been anticipated in ordinary experience of men; that foreseeability is an essential element of proximate cause. It further asserts it affirmatively appears from the complaint that the proximate cause of appellant's injuries was the losing control of the automobile on the east side of the highway.

Appellant contends the putting and leaving of the poles on the shoulder of the highway within two or three feet of the pavement was a violation of §§10-2601,

10-2605, Burns' 1942 Repl., and §36-1705, Burns' 1949 Repl., and therefore was negligence as a matter of law. He further says the use of such highway by appellees was not consistent with the continued use of the road and every part thereof as a passageway by all persons exercising ordinary care, and the placing and leaving of said poles along said highway was a nuisance. Citing: *Indianapolis Water Co.* v. *Schoenemann* (1939), 107 Ind. App. 308, 20 N. E. 2d 671 (transfer denied) ; *The Indiana Natural and Illuminating Gas Company* v. *McMath* (1900), 26 Ind. App. 154, 57 N. E. 593, 59 N. E. 287.

Finally, appellant says the specific allegations of appellant's second amended complaint are sufficiently definite to furnish information to appellees of appellant's claim and for them to prepare and present their case adequately, and said complaint states facts in such manner as to enable a person of common understanding to know what is intended.

It is our opinion that §§10-2601, 10-2605, supra, are not applicable to the facts alleged in the complaint herein. Section 36-1705, supra, provides as follows:

"Poles and wires. Corporations now formed or which may hereafter be organized for the purpose of constructing, operating and maintaining telephone lines and telephone exchanges, or for the purpose of generating and distributing electricity for light, heat or power, are authorized to set and maintain their poles, posts, piers, abutments, wires and other appliances or fixtures upon, along, under and across any of the public roads highways and waters of this state outside of cities and incorporated towns; and individuals owning telephone lines or lines for the transmission of electricity are hereby given the same authority: *Provided, That the same shall be erected and maintained in such manner as not to incommode the public in the use of such roads, highways and waters.*" (Our emphasis)

We are of the opinion the allegations of the first paragraph of amended complaint are sufficient to present a question of fact as to whether appellees violated the emphasized provision of the above quoted statute.

In the Indiana etc. Gas Company case, *supra,* this court, after holding the trial court did not err in overruling a demurrer to the complaint, speaking on the question of foreseeability, said: (at p. 157)

> "It is not necessary to a recovery in such a case that the particular injury should be foreseen which in fact occurred, but it is sufficient if it was to be expected reasonably that injury might occur to some person exercising a legal right in an ordinarily careful manner. *Ohio, etc. R. Co.* v. *Trowbridge,* 126 Ind. 391, 395.
>
> "It is a nuisance and unlawful to place and keep or leave continuously in a public highway anything which either impedes or endangers public travel. This rule applies to the whole width of the highway, and not merely to a worn portion of it commonly used for passage. Privileges which, if usurped by a great number of persons or corporations would change the road from a public easement to a mere special benefit or convenience to such usurpers, are not lawful for any of them. The uses must be consistent with the continued use of the road and every part thereof as a passageway by all persons exercising ordinary care."

In the case of *Dalton Foundries, Incorporated* v. *Jefferies* (1944), 114 Ind. App. 271, 283, 51 N. E. 2d 13 (transfer denied), we said:

> "It is not necessary, to make one liable for negligence, that he should have forseen the particular or precise injury that in fact occurred. If he negligently permitted conditions to exist or continue from which he might reasonably have anticipated a certain class of injuries might very likely result,

and if the resulting injury was of such class, his negligence is actionable."

Ordinarily, whether or not the particular injury suffered is one of a class which was reasonably foreseeable is a question of fact for the jury to determine. *Daugherty* v. *Hunt* (1942), 110 Ind. App. 264, 272, 38 N. E. 2d 250.

Appellees, in support of their contention that under the averments of the complaint they could not have anticipated the accident therein alleged, cite the cases of *Indiana Service Corporation* v. *Johnson et al.* (1941), 109 Ind. App. 204, 34 N. E. 2d 157, and *McIntosh* v. *Pennsylvania R. Co.* (1942), 111 Ind. App. 550, 38 N. E. 2d 263. In our opinion, the facts in the Johnson case, *supra*, are clearly distinguishable from the facts in this case. We believe that the McIntosh case, *supra*, not only does not support their contention, but, on the contrary, gives strong support to appellant's position here. In that case (at p. 559) we said:

"We agree with the appellee that under our decisions the fundamental test is the test of foreseeability. In the case of *Swanson* v. *Slagal, Administratrix* (1937), 212 Ind. 394, 413, 8 N. E. 2d 993, the Supreme Court, after analyzing many of the Indiana cases, has this to say: 'As stated above this court has utilized as a practical rule of legal cause the test of foreseeability. The result of the holding in the foregoing cases is that if the wrongful act of the defendant is a substantial factor in producing the injury complained of, and if the particular injury suffered by the plaintiff is one of a class which was reasonably foreseeable at the time of the defendant's misconduct, then there is a causal relation in fact as well as a legal cause. It is the function of the jury to determine whether the defendant's act is a substantial factor in producing the injury of the plaintiff and whether such injury was reasonably foreseeable at the time of the defendant's

misconduct'. Our conclusion is that the last quoted statement is applicable in the instant case, and that the trial court should have submitted to the jury the question as to whether or not the defendant's negligent act in the admitted excessive speed of its train was a substantial factor in producing the injury of the appellant, and should have submitted the further question to the jury as to whether or not such injury was reasonably foreseeable at the time of the defendant's misconduct. This conclusion inevitably leads to a reversal of the judgment of the trial court."

In the Indianapolis Water Company case, *supra,* we held that when a utility did not own but had control of a stop-cock on a street, it had the obligation of maintaining it in a safe manner, so far as the public was concerned.

In our opinion each paragraph of the amended complaint alleged facts from which the injuries alleged to have been sustained by appellant could reasonably have been foreseeable by appellees. The complaint averred facts with sufficient clarity to apprise appellees of the charges made against them. This is all that is required. *Regester* v. *Lincoln Oil Refining Company et al.* (1933), 95 Ind. App. 425, 183 N. E. 693; *A. & B. Automatic Heating Sales and Service, Inc.* v. *Cooley* (1950), 120 Ind. App. 590, 92 N. E. 2d 865 (transfer denied). The complaint does not show that as a matter of law appellant's driving off the road was the proximate cause of his injuries. Therefore, the trial court erred in sustaining the demurrer to the complaint.

Judgment reversed, with instructions to the trial court to overrule appellees' demurrers.

NOTE.—Reported in 108 N. E. 2d 273.